**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MICHAEL RAY HARRIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-0141-JHP-FHM** |
| | ) | |
| **JOE ALLBAUGH, Director,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is Petitioner's amended 28 U.S.C. § 2254 habeas corpus petition (Doc. 12).

Petitioner, a state inmate appearing *pro se*, challenges the constitutional validity of the judgment and

sentence entered against him in Tulsa County District Court Case No. CF-2012-480. In that case,

Petitioner was convicted of first degree rape, after former conviction of two or more felonies, and

sentenced to life without the possibility of parole. Petitioner alleges he is entitled to federal habeas

relief because (1) the trial court erroneously admitted prejudicial propensity evidence, (2) the

prosecutor deprived him of a fair trial by invoking juror sympathy during the second phase of his

bifurcated trial, (3) trial counsel provided ineffective assistance, and (4) the State failed to present

sufficient evidence to support his conviction. Respondent filed a response to the petition (Doc. 16),

and provided the state court records necessary to adjudicate Petitioner's claims (Docs. 16, 17).

Petitioner filed a reply (Doc. 22), and submitted supporting documents (Doc. 23). For the reasons

discussed below, the Court finds the habeas petition shall be denied.

---

[1] Petitioner is currently incarcerated at Lawton Correctional Facility, Lawton, Oklahoma. *See* Doc. 26. Joe Allbaugh, Director of the Oklahoma Department of Corrections, is therefore substituted in place of Tracy McCollum as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note this substitution on the record.

## BACKGROUND

Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless a habeas petitioner rebuts that presumption "by clear and convincing evidence." Following review of the record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds the factual background provided in the Oklahoma Court of Criminal Appeals' decision affirming Petitioner's conviction and sentence is adequate and accurate. Therefore, the Court adopts the following summary as its own:

In the early evening of November 1, 2011, A.T. left her Tulsa home, with the intent of walking to a local bar. As she walked she held out her thumb hoping to get a ride. A vehicle described by A.T. as a Ford Explorer-type pulled over and parked ahead of her. The driver offered her a ride. She approached the vehicle cautiously, decided it would be safe to "catch a ride for a couple of blocks," and got in the car. The driver introduced himself as "Mark" and asked why she was going to a bar. She told him she had fought with her boyfriend and wanted a few drinks. "Mark" proposed to take her to the Vegas Club several miles away as an alternative to her local bar. A.T. accepted his offer and the two made casual conversation on the way. When the vehicle passed the Vegas Club[,] A.T. asked where they were going. "Mark" told her he had a friend nearby and wondered if she used drugs. A.T. told him she did not and then realized he had turned into a field near a water treatment facility. He told her it was a nice night to look at the stars.

"Mark" parked the car, got out and opened A.T.'s door. He asked her to get out; she refused. He then ordered her to get out. When she did, he forced her against the car and tried to kiss her. She refused, spitting in his face. A.T. testified she had fought his advances, but the man was strong enough to throw her to the ground, jump on her, grab her hair and bash her head into the ground. She freed herself twice, but finally he pinned her to the ground choking her with one hand and blocking her breath with the other. When she felt a sharp object pressing into her neck, she stopped resisting. He pulled off her belt, unbuttoned and pulled down her pants. After some initial difficulty in achieving an erection, he raped A.T., thrusting his penis into her vagina. After he ejaculated, he drove away, ignoring A.T.'s pleas to take her back to her neighborhood.

Alone, A.T. walked toward a busy highway hoping for help. She testified that two law enforcement officers stopped to check on her, but refused to take her home or to a hospital. She said they ridiculed her. An ambulance also arrived, but because of A.T.'s hysteria, the attendant documented the encounter noting A.T.

refused service and left her. She reached her boyfriend and friend by cell phone. They took her home and later called for an ambulance to take her to the hospital for a rape exam.

A few months later, Detective Eagan of the Tulsa police department interviewed A.T. and showed her a six person photo display. A.T. identified one of the men in the lineup as her attacker and estimated her certainty at 95 percent. She said her hesitation stemmed from her inability to see the man's teeth because her attacker was missing his two front teeth. She described her rapist as white, thin, in his 50's, with pockmarks on his face and a "salt and pepper" mustache. At trial, A.T. identified [Petitioner] as the man who raped her.

Three other women, H.W., D.C., and S.G., each testified that she was also sexually assaulted by [Petitioner]. Those assaults took place within three months of the incident described by A.T. Each assault bore similarities to the attack on A.T., and each of the three women identified [Petitioner] as her attacker.

Doc. 16-4, *Harris v. State*, No. F-2013-288 (Okla. Crim. App. 2014) (unpublished) (hereafter, "OCCA Op."), at 2-4.[2]

Following a bifurcated trial, a Tulsa County jury convicted Petitioner of first degree rape, in violation of OKLA. STAT. tit. 21, §§ 1111, 1114 & 1115, after former conviction of two or more felonies.[3] *Id.* at 1; *see also* Doc. 16-1, Judgment and Sentence, at 1. Consistent with the jury's recommendation, the trial court imposed a sentence of life without the possibility of parole and a $10,000 fine. Doc. 16-1 at 1; *see also* Doc. 17-3, Tr. Trial vol. 3, at 216.

---

[2]     For clarity, the Court's citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

[3]     In Oklahoma, a criminal defendant being prosecuted for a second or subsequent offense has a statutory right to a bifurcated trial. OKLA. STAT. tit. 22, § 860.1. During the first phase of trial, the jury is "instructed to determine only guilt or innocence on the offense charged." *Id.* If the jury returns a guilty verdict, the State then submits evidence of the defendant's prior convictions during the second phase of trial, and the jury must "determine the fact of former conviction, and the punishment." *Id.*

Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising four propositions of error. *See* Doc. 16-2, Pet'r App. Brief, at 2. In an unpublished opinion filed March 18, 2014, the OCCA affirmed Petitioner's conviction and sentence. Doc. 16-4, OCCA Op., at 1, 13. Petitioner did not seek further review of the OCCA's decision by filing a petition for writ of certiorari with the United States Supreme Court. *See* Doc. 12 at 3. Also, nothing in the record shows Petitioner filed an application for post-conviction relief in state court.[4]

Petitioner filed a federal habeas petition on March 20, 2015, asserting nine claims. Doc. 1. By Order filed October 29, 2015 (Doc. 11), the Court advised Petitioner the petition was subject to being dismissed as a "mixed petition" because it contained both exhausted and unexhausted claims. As directed by the Court, Petitioner filed an amended petition (Doc. 12) on November 30, 2015. In his amended petition, Petitioner seeks habeas relief on the same four claims he presented to the OCCA on direct appeal:

Ground 1: Abuse of discretion by trial court in admitting evidence of sexual propensity that was prejudicial towards Petitioner.

Ground 2: Prosecutorial misconduct during 2nd stage did deprive Petitioner a fair trial.

Ground 3: Ineffective assistance of counsel at jury trial.

Ground 4: Insufficient evidence to prove beyond doubt Petitioner was guilty of crime charged.

Doc. 12 at 5, 7, 8, 10.

Respondent concedes, and the Court finds, that Petitioner timely filed his federal habeas petition. Doc. 16 at 1; *see* 28 U.S.C. § 2244(d)(1) (imposing one-year period of limitation for filing

---

[4] The record reflects Petitioner filed a motion for transcripts and a motion to reconsider the denial of the motion for transcripts. Doc. 12 at 3-4.

federal habeas petition). Respondent contends, however, that "portions of the arguments presented in Grounds 1-3 are still unexhausted" despite the Court's prior order directing Petitioner to omit exhausted claims. Doc. 16 at 1-2; *see id.* § 2254(b)(1)(A) (requiring state prisoner to exhaust available state remedies before filing federal habeas petition). As to the exhausted portions of Petitioner's claims Respondent deems exhausted, Respondent contends Petitioner is not entitled to habeas relief because Petitioner's Ground 1 claim alleges only an error of state law and § 2254(d) bars habeas relief on his remaining claims. Doc. 16 at 4-21.

## *ANALYSIS*

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002).

When a state court adjudicates the merits of a state prisoner's federal claims, a federal court may not grant habeas relief on those claims unless the prisoner demonstrates that the state court's adjudication of those claims either (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States," *id.* § 2254(d)(1); (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2). As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or

principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Williams*, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). As previously stated, the federal court must also presume the correctness of the state court's factual findings unless the state prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The standards set forth in § 2254 are "difficult to meet" by design, *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Thus, as a precondition to obtaining federal habeas relief a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even if a state prisoner overcomes § 2254(d)'s "formidable barrier," *Burt v. Titlow*, 571 U.S. 12, 16 (2013), federal habeas relief is not automatic. Instead, overcoming that barrier permits the federal court to review the prisoner's constitutional claims *de novo*, rather than through AEDPA's deferential lens. *See Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [federal habeas court] to review de novo" petitioner's claims— without deference to state court's decision—to determine whether petitioner is entitled to habeas relief). Further, even if the federal court finds constitutional error on *de novo* review, it "must assess the prejudicial impact of [that] constitutional error . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Under the *Brecht* standard, a federal habeas court should grant relief only if it "is in grave doubt as to the harmlessness of an error that affects substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

## I.     Admission of propensity evidence (Ground 1)

In Ground 1, Petitioner alleges the trial court abused its discretion by admitting "sexual propensity" evidence. Doc. 12 at 5.[5] On direct appeal, Petitioner specifically argues the trial court

---

[5]     Because Petitioner appears pro se, the Court liberally construes the arguments presented in his habeas petition. *Licon v. Ledezma*, 638 F.3d 1303, 1305-06 (10th Cir. 2011). But the Court will not construct legal arguments or theories on his behalf. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nevertheless, the Court finds it helpful to consider Petitioner's appellate brief in construing his arguments.

should have excluded testimony from H.W., D.C., and S.G. *See* Doc. 16-2, Pet'r App. Brief, at 21. Those three witnesses testified they were sexually assaulted, described the details of their respective assaults, and identified Petitioner as the man who sexually assaulted them. *Id.* Petitioner argues even if this evidence was relevant to prove Petitioner's identity, most of H.W.'s testimony and all of the testimony from D.C. and S.G. should have been excluded as more prejudicial than probative. *Id.* at 21-26.

Respondent contends Petitioner is not entitled to relief on this claim because he alleges only an error of state law, not a cognizable habeas claim. Doc. 16 at 4-6. Specifically, Respondent argues Petitioner's argument on direct appeal focused on whether the trial court violated state law by admitting the challenged testimony under OKLA. STAT. tit. 12, § 2413 without conducting a sufficient balancing test under OKLA. STAT. tit. 12, § 2403.[6] *Id.* Respondent further argues Petitioner's conclusory assertion in his direct appeal brief, at the end of his state-law argument, that the alleged evidentiary error deprived him of a fair trial and due process under the Fifth and Fourteenth Amendments and the state constitution, was not sufficient to fairly present a federal claim to the OCCA. *Id.* at 5 n.1. Thus, Respondent argues, to the extent Petitioner alleges a due-process claim in Ground 1, that claim is procedurally defaulted. *Id.* at 5-7.

---

[6]     Under Oklahoma's Evidence Code, "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." OKLA. STAT. tit. 12, § 2413. However, a trial court is permitted to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." *Id.* § 2403.

As Respondent points out, the OCCA seemed to address Petitioner's propensity-evidence claim as an alleged error of state law. *See* Doc. 16-4, OCCA Op., at 4-7. "[F]ederal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see* 28 U.S.C. § 2254(a). As a result, federal courts "may not provide habeas corpus relief on the basis of state court evidentiary rulings 'unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results.'" *Duckett v. Mulliin*, 306 F.3d 982, 999 (10th Cir. 2002) (quoting *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000)).

However, in this case, the OCCA reviewed the alleged evidentiary error under its plain-error test. Doc. 16-4, OCCA Op., at 5. It did so because Petitioner did not renew his pretrial challenge to the admission of the propensity evidence when the evidence was admitted at trial. *Id.* The Tenth Circuit Court of Appeals has stated, "Oklahoma's plain-error test is rooted in due process." *Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005). Because the OCCA effectively adjudicated the merits of Petitioner's due-process claim by applying the plain-error test, this Court will review Ground 1 under § 2254(d) rather than finding it procedurally defaulted. *Id.* This Court must therefore defer to the OCCA's ruling unless the OCCA unreasonably applied the plain-error test. *See id.* at 1125 (noting the OCCA reviewed alleged evidentiary error for plain error and stating, "[b]ecause the OCCA applied the same test we apply to determine whether there has been a due process violation, we must defer to its ruling unless it unreasonably appl[ied] [the plain-error] test"). In addressing Petitioner's claim, the OCCA rejected Petitioner's argument that the challenged testimony was more prejudicial than probative. Doc. 16-4, OCCA Op., at 4-7. The OCCA reasoned,

Whether defendant [Petitioner] was in fact the man who raped A.T. was perhaps the most important factual issue at trial, and there were clearly significant similarities between the rape of A.T. and the rapes of the other three victims. In ruling that those similarities were sufficient to admit the testimony of those victims under Section 2413, the district court made no explicit finding that the testimony of those alleged victims would be more probative of [Petitioner's] identity as A.T.'s attacker than unfairly prejudicial. The record is clear, however, that the district court had undertaken such analysis, had thoughtfully considered the parties' arguments and had properly concluded the probative value of the evidence outweighed its clearly prejudicial effect.

Doc. 16-4, OCCA Op., at 7 (footnotes omitted).

In finding the record was "clear," the OCCA specifically noted several similarities between the attacks on all four women, including "the rapist in each attack had the same general physical characteristics, the attacks were perpetrated by someone the alleged victims did not know, the attacks occurred over a short period of time and the attacker experienced sexual dysfunction." *Id.* at 6 n.3. Additionally, the OCCA noted the parties "discussed at length the similarities and dissimilarities between the rape of A.T. and the sexual assaults of the other alleged victims" during arguments at a pretrial motion to admit the propensity evidence. *Id.* at 7 n.4. These findings are presumed correct, and Petitioner has not rebutted that presumption "by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Based on these findings, the OCCA was "not convinced . . . that the dissimilar details between the attacks required exclusion of the evidence." Doc. 16-4, OCCA Op., at 7. The OCCA further reasoned (1) the trial court "was conscientious and issued proper instructions concerning the propensity evidence to limit its prejudicial impact, (2) "[t]he evidence was offered generally to provide a link to the identity of A.T.'s attacker rather than as distinctive or signature evidence," and (3) "[t]he evidence was undoubtedly relevant and the purpose for introducing the evidence was proper." *Id.* Consequently, the OCCA found no error in its admission and thus, no plain error and no due process violation.

Giving appropriate deference to the OCCA's application of the plain-error test, the Court finds the OCCA did not unreasonably apply clearly established federal law in rejecting Petitioner's claim that he was denied due process. Thus, the Court denies habeas relief on Ground 1.

## II.    Prosecutorial misconduct (Ground 2)

In Ground 2, Petitioner alleges prosecutorial misconduct during the second phase of his trial deprived him of a fair trial. Doc. 12 at 7. First, he argues the prosecutor introduced evidence "that was irrelevant to the crime charged and does not support an actual crime." *Id.* Second, he argues the prosecutor "mislead [sic] the Jury through the confusion of issues [and] perjurous [sic] testimony from [D]etective Waller." *Id.* Third, he argues the prosecutor "asked for sympathy based on bad characteristics rather than factual elements of a crime committed." *Id.*

### A.    Failure to exhaust/anticipatory procedural bar

As Respondent points out, Petitioner alleged only the third instance of prosecutorial misconduct on direct appeal. Doc. 16 at 8-9. Specifically, in his appellate brief, Petitioner cited two portions of the prosecutor's second phase closing argument and alleged the prosecutor "inappropriately appealed for a verdict and punishment based on sympathy for [A.T.] and based on societal alarm." Doc. 16-2, Pet'r. App. Brief, at 27. As a result, Respondent urges this Court to find Petitioner's first two alleged instances of prosecutorial misconduct are unexhausted and to apply an anticipatory procedural bar.[7] Doc. 16 at 8-9. Respondent also urges this court to find Petitioner has

---

[7]    "'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if petitioners returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007).

not made the requisite showings to overcome the procedural default as to these portions of his Ground 2 claim. *Id.*

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. *Thacker v. Workman*, 678 F.3d 820, 838-39 (10th Cir. 2012) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999)). To satisfy this exhaustion requirement, "state prisoners [must] give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 839 (quoting *O'Sullivan*, 526 U.S. at 845). If a state prisoner would be procedurally barred from returning to state court to exhaust a claim, a federal court will apply an anticipatory procedural bar unless the prisoner can show either "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 841-42 (quoting *Anderson*, 476 F.3d at 1140).

The Court finds Petitioner did not exhaust his Ground 2 claim as to the first two alleged instances of prosecutorial misconduct. *See Thacker*, 678 F.3d at 839; *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (discussing fair-presentation requirement of exhaustion doctrine and noting that state prisoner "cannot assert entirely different arguments from those raised before the state court"). The Court also finds these unexhausted portions of Petitioner's claim would be procedurally barred if Petitioner were to return to state court to exhaust them. The OCCA routinely bars consideration of issues which were not, but could have been, raised on direct appeal. *See, e.g.*, *Boyd v. State*, 915 P.2d 922, 924 (Okla. Crim. App. 1996) (noting in application for post-conviction relief, the OCCA will not consider an issue raised on direct appeal and therefore barred by *res judicata*, nor will it consider an issue which has been waived because it could have been raised on direct appeal but was not"). Thus, unless Petitioner can make the requisite showings to overcome

application of an anticipatory procedural bar, the Court will not consider the unexhausted portions of Petitioner's Ground 2 claim.

In his reply, Petitioner appears to assert he can overcome the procedural default either because he is "actually innocent" or because his appellate counsel was ineffective for failing to fully develop the four claims raised on direct appeal. *See* Doc. 22 at 4-15; Doc. 23 (supporting exhibits). For two reasons, the Court finds Petitioner cannot overcome the procedural default. First, to the extent Petitioner alleges he received ineffective assistance of appellate counsel, that claim is unexhausted. A claim that appellate counsel provided ineffective assistance may, in some cases, serve as "cause" to overcome a procedural bar. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). However, the ineffective-assistance-of-counsel claim must first be presented to the state courts as an independent claim before the habeas petitioner can assert that claim as cause to excuse a procedural default of other claims. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding "that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Because Petitioner has not presented his ineffective-assistance-of-counsel claim to any state court, this Court finds he may not rely on that claim as "cause" to excuse his procedural default.

Second, the Court does not find the "miscarriage of justice" exception would excuse the procedural default because Petitioner has not made a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). State "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The "*Schlup*

standard is demanding." *Id.* at 538. "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard." *Frost*, 749 F.3d at 1232. Rather, "[t]o be credible [a claim of actual innocence requires] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

Here, in support of his assertion of innocence, Petitioner provides (1) documents showing he sold a blue Jeep to a salvage yard several months before A.T. was raped, (2) documents showing he had access to a red Jeep around the time of the rape, and (3) DNA results showing he was excluded as a contributor after a sexual assault exam was performed on a victim that is neither A.T. nor any of the other three witnesses who testified at trial. *See* Doc. 23. In relying on these documents, Petitioner primarily emphasizes that A.T. described her attacker's vehicle "as a Dark Forrest Green colored SUV type of Four door explorer." Doc. 22 at 9. At trial, A.T. did identify her attacker's vehicle as a "green-like Ford Explorer Jeep." Doc. 17-2, Tr. Trial. vol. 2, at 65. However, she also testified at trial that she was 95 percent certain when she identified Petitioner as her attacker in the pretrial photo lineup and 100 percent certain when she identified him at trial. *Id.* at 104. Three other women also identified Petitioner as the man who attacked them in, as the OCCA found, sexual assaults that bore significant similarities to the attack on A.T. Thus, Petitioner cannot credibly show that, had the jury been exposed to his purportedly "new" evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schulp*, 513 U.S. at 327. For these reasons, the Court will confine its analysis to the prosecutorial-misconduct claim as it was presented to the OCCA on direct appeal.

### B.     Merits

Applying plain-error review, the OCCA rejected Petitioner's prosecutorial-misconduct claim. Doc. 16-4, OCCA Op., at 7-9. The OCCA explained it "grants relief on a prosecutorial misconduct claim when the misconduct effectively deprived the defendant of a fair trial or a fair and reliable sentencing proceeding." *Id.* The OCCA then considered the challenged comments, "within the context of the entire trial," and in light of the "strength of the evidence against the defendant." *Id.* Ultimately, the OCCA did "not find the prosecutor's comments regarding the continued effect the rape would have on A.T. were outside the boundaries of acceptable argument; nor [did it] find that the prosecutor's remarks impermissibly invoked societal alarm." *Id.*

Respondent argues the OCCA's decision is neither contrary to nor an unreasonable application of Supreme Court precedent. *Id.* at 8-12. The Court agrees. The Supreme Court's decision in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) provides the governing legal principle for review of prosecutorial-misconduct claims. Under *Donnelly*, habeas relief is appropriate where prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 416 U.S. at 643. The due-process inquiry "requires an examination of the entire proceedings, including the strength of the evidence against the defendant." *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015).

Here, in reviewing Petitioner's claim for plain-error, the OCCA conducted the due-process inquiry provided for in *Donnelly*. Doc. 16-3, OCCA Op., at 8; *see also Thornburg*, 422 F.3d at 1125 (finding "no practical distinction between Oklahoma's formulation of plain error and the federal due-process test). Thus, the only question for this Court is whether the OCCA's application of *Donnelly* was objectively unreasonable. *See Thornburg*, 422 F.3d at 1125; 28 U.S.C. § 2254(d)(1).

During second phase closing arguments, the prosecutor asked the jury to consider giving Petitioner the maximum sentence of life without parole. Doc. 17-3, Tr. Trial vol. 3, at 208. In doing so, the prosecutor essentially argued that Petitioner's decision to rape A.T. was a decision with lifelong effects for A.T. *See id.* at 208-10. Having considered the prosecutor's remarks in the context of the entire trial and in light of the strength of the State's evidence, the Court finds the remarkes, even if arguably dramatic, spoke to a topic within the realm of common knowledge and did not render Petitioner's trial fundamentally unfair. *See Hanson*, 797 F.3d at 843 (noting remarks do not offend due process even if "undesirable or universally condemned" (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986))). As a result, the Court finds nothing objectively unreasonable about the OCCA's decision on this claim. Thus, the Court denies habeas relief on Ground 2.

### III.    Ineffective assistance of trial counsel (Ground 3)

Next, Petitioner alleges he was deprived of his Sixth Amendment right to the effective assistance of trial counsel. Specifically, he alleges trial counsel was ineffective for (1) failing to object to the admission of the propensity evidence discussed in Ground 1, (2) failing to challenge A.T.'s in-court identification as tainted by an impermissibly suggestive pretrial photo-lineup, (3) failing to object to the prosecutorial misconduct alleged in Ground 2, (4) failing to investigate "any of Petitioner's claims," and (5) failing to "present evidence on Petitioner's behalf." Doc. 12 at 8.[8]

---

[8]    As Respondent points out, Petitioner did not raise his fourth and fifth allegations in his direct appeal. *See* Doc. 16 at 17-18; Doc. 16-1, Pet'r App. Brief, at 28-33. For the same reasons discussed in analyzing whether Petitioner fully exhausted his Ground 2 claim, the Court will confine its analysis of the Ground 3 claim to the allegations Petitioner presented to the OCCA on direct appeal. *See supra* Section II.A., pp, 11-15 (discussing exhaustion).

The OCCA rejected his Sixth Amendment claim. In doing so, the OCCA correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the clearly established federal law governing Petitioner's ineffective-assistance-of-counsel claim. Doc. 16-4, OCCA Op., at 9. Under *Strickland*, a defendant must show (1) his counsel's performance was deficient and (2) the deficient performance was prejudicial. 466 U.S. at 687. Applying *Strickland*, the OCCA determined Petitioner failed to make either showing. Doc. 16-4, OCCA Op., at 9-12.

Applying *Strickland*, the OCCA first concluded that because it found no error in the admission of propensity evidence and no prosecutorial misconduct, Petitioner failed to demonstrate trial counsel performed deficiently by failing to object to the admission of the propensity evidence or the prosecutor's remarks. *Id.* at 10. Next, the OCCA considered whether trial counsel was ineffective for failing to challenge A.T.'s in-court identification and her testimony regarding the pre-trial photo lineup. *Id.* at 11-12. The OCCA stated, "[C]onvictions based on 'eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 11 (quoting *Postelle v. State*, 2011 OK CR 30, ¶ 28, 267 P.3d 114, 130 (2012)). The OCCA determined the challenged photographic lineup "was not impermissibly suggestive." *Id.* The OCCA further reasoned, "even if the pretrial procedure could be considered unduly suggestive," A.T.'s in-court identification of Petitioner was otherwise reliable. In making that finding, the OCCA considered "A.T.'s opportunity to observe her attacker, the degree of her attention, the accuracy of her prior identification and her certainty." *Id.* As a result, the OCCA concluded Petitioner could not show "a reasonable

probability the outcome of his case would have been different had defense counsel challenged A.T.'s pretrial and in-court identifications." *Id.* at 11-12.

When a state court applies the correct federal law to deny relief, the sole question for a federal habeas court is whether the state court applied the law "in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

In rejecting Petitioner's ineffective-assistance-of-counsel claim, the OCCA reasonably applied *Strickland* when it determined trial counsel's performance was not deficient with respect to the alleged failure to object to the proper admission of propensity evidence and the prosecutor's unobjectionable closing remarks.

Likewise, the OCCA reasonably applied *Strickland* when it determined trial counsel was not ineffective for failing to challenge A.T.'s identifications. The OCCA first considered whether that challenge would have been successful. In doing so, the OCCA correctly identified the legal principle from Supreme Court precedent that governs challenges to eyewitness identifications. In *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012), the Supreme Court explained "a due process check on the admission of eyewitness identification" is necessary "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of the crime." *Id.* This due-process check "requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 239 (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). This case-specific assessment involves a two-part inquiry. First, the trial court asks whether the eyewitness identification was "procured under

unnecessarily suggestive circumstances arranged by law enforcement." *Id.* at 248.  If, and only if, the answer to that question is yes, the trial court applies the factors set out in *Biggers*[9] and determines whether the identification has sufficient indicia of reliability "[n]otwithstanding the improper procedure." *Id.* at 238-40; *see also id.* at 241 ("The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct.").  This is so because "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977).  If the court determines "the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Perry*, 565 U.S. at 231.

Applying these principles, the OCCA found no error in the admission of A.T.'s in-court identification or her testimony about the pretrial identification.  Doc. 16-4, OCCA Op., at 11-12. Thus, the OCCA determined, Petitioner could not demonstrate he was prejudiced by trial counsel's failure to object to the admission of that evidence.  Viewing the OCCA's decision with double deference, the Court agrees with Respondent that § 2254(d) bars habeas relief on Petitioner's ineffective-assistance-of-counsel claim.  Thus, the Court denies relief on Ground 3.

## IV.    Insufficient evidence (Ground 4)

---

[9]      In *Biggers*, the Supreme Court identified five factors to be considered in measuring the reliability of an eyewitness identification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  409 U.S. at 199-200.

Finally, in Ground 4, Petitioner claims he was deprived of due process because the State's evidence is insufficient to support his conviction. Doc. 12 at 10. Specifically, he alleges his conviction was obtained through the use of "non-probative photographs" and "false and perjurous [sic] testimony" rather than physical evidence linking him to the "alleged crime." *Id.* On direct appeal, he challenged the sufficiency of the evidence on slightly different grounds. There, he argued that without the erroneous admission of "the unfairly prejudicial" propensity evidence and A.T.'s "impermissibly suggestive identifications" the remaining evidence was insufficient. Doc. 16-1, Pet'r App. Brief, at 34-35.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson* supplies the clearly established legal rule governing Petitioner's claim that the evidence is insufficient to support her drug-trafficking conviction. *See Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) (identifying *Jackson* as constitutional standard for reviewing state habeas petitioner's sufficiency-of-the-evidence claim). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with

the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)); *see also id.* at 656 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that *Jackson* "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason").  In applying the *Jackson* standard on federal habeas review, the Court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655.  "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Id.*

Petitioner challenges his conviction for first degree rape, in violation of Okla. Stat. tit. 21, §§ 1111, 1114, 1115.  To obtain this conviction, the State had to prove, beyond a reasonable doubt, Petitioner (1) had sexual intercourse, (2) with a person who was not his spouse, (3) where force or violence was used or threatened against the victim or another and, if by threat of force of violence, where the defendant had apparent power to carry out the threat.  *See* Okla. Stat. tit. 21, § 1115; Okla. Unif. Crim. Jury Instr. No. 4-120 (2d ed.).

The OCCA rejected Petitioner's sufficiency-of-the-evidence claim. In doing so, the OCCA applied the *Jackson* standard[10] and concluded,

---

[10]     The OCCA did not cite *Jackson*; instead, it cited its own precedent recognizing *Jackson* as the controlling legal principle.  Doc. 16-4, OCCA Op., at 12; *see Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985) (discussing and applying *Jackson* standard).  Even if the OCCA had not cited *Spuehler*, the OCCA's decision would still be entitled to AEDPA deference.  *See Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying § 2254(d) "notwithstanding the [OCCA's] failure to cite or discuss federal case law").

As discussed in Proposition 1, the district court did not err in admitting the sexual propensity evidence in this case. Nor were A.T.'s pretrial and in-court identifications of [Petitioner] tainted. *See* Proposition 3. After reviewing the evidence in the light most favorable to the State, we find that any rational trier of fact could have found beyond a reasonable doubt that [Petitioner] committed first degree rape based on the evidence presented in this case.

Doc. 16-4, OCCA Op., at 12-13.

As previously noted, this Court has reviewed the OCCA's summary of the facts as well as the trial transcripts. Viewing the evidence presented at trial in the light most favorable to the prosecution and giving proper deference to the jury's finding of guilt and the OCCA's rejection of Petitioner's sufficiency challenge, the Court agrees with Respondent that Petitioner has failed to make the requisite showings under § 2254(d) to obtain habeas relief on this claim. Thus, the Court denies relief on Ground 4.[11]

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Petitioner has not established he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for writ of habeas corpus.

### Certificate of Appealability

---

[11] In his reply, Petitioner renews his request for an evidentiary hearing and seeks expansion of the record. Doc. 22 at 7, 11. As discussed in the foregoing analysis, all of Petitioner's exhausted claims are subject to review under § 2254(d). The Court therefore denies Petitioner's requests for an evidentiary hearing and expansion of the record. *See Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies habeas relief by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if the district court denies habeas relief on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Because reasonable jurists would not debate the correctness of the Court's assessment of Petitioner's claims or its ruling that portions of those claims are procedurally barred, the Court denies a certificate of appealability as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note the substitution of Joe Allbaugh, Director, in place of Tracy McCollum, Warden, as party respondent.

2. Petitioner's requests for an evidentiary hearing and expansion of the record are **denied**.

3. The amended petition for a writ of habeas corpus (Doc. 12) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate Judgment shall be entered in this case.

    **DATED** this 6th day of April 2018.

James H. Payne<br>
United States District Judge<br>
Northern District of Oklahoma

23